205.  NAMI thus conspired with Pfizer to implement Pfizer's illegal marketing scheme, causing the *Qui Tam* States and Federal Programs to suffer financial injury.

### G.  PFIZER PROMOTED GEODON® FOR UNAPPROVED USES AND MADE UNSUBSTANTIATED SUPERIORITY CLAIMS.

#### 1.  Promotion in Nursing Homes for Unapproved Dementia and Agitation-Type Behavior.

206.  Geodon® has a black box warning against using it for treating elderly patients with dementia.  Notwithstanding, Pfizer on a regular basis promoted Geodon® to doctors treating this population as a means of increasing Geodon® sales.

207.  One example involves comments made by a Pfizer District Manager to approximately forty to sixty sales representatives at a POA Meeting.  On November 3, 2005, Linda Greeson ("Greeson"), Pfizer's District Manager for Oklahoma advised this group of sales representatives at a POA Meeting at the Sheraton Hotel in Clayton, Missouri that they could grow Geodon® business by marketing Geodon® in nursing homes. Greeson recommended that the sales representatives should do "in-service" calls at nursing homes to market the drug to that population. In so doing, Greeson ignored the FDA black box warning against Geodon®'s use in elderly patients suffering from agitation resulting from dementia, as well as the related off-label use.  Also present at this POA were Pfizer District Manager Randy Hill and now former District Manager Geoff Holt.  Greeson also suggested to the attendees that they speak with a Pfizer sales representative who had promoted Geodon® in nursing homes.

208.  An "in-service" call involved promoting Geodon® at the nursing home to the staff – typically nurses, although physicians or pharmacists may also be present. Pfizer sales representatives also leave Geodon® written materials, as well as small gifts such as pens and magnets.

61

209.  Unless a nursing home resident has a diagnosis of schizophrenia, Geodon® is not eligible for reimbursement by the government.  Pfizer knew this, and intended that Geodon® be prescribed for dementia-related conditions, or agitation as a result of Alzheimer's disease and Parkinson's disease.

210.  Pfizer's nursing home off-label strategy was effective in increasing Geodon® sales.  Geodon®'s average national share of the SGA market was in the range of six to seven percent.  In Oklahoma nursing homes, because of Pfizer's off-label marketing scheme, Geodon®'s market share was much higher, fourteen to fifteen percent.

211.  Further evidence of the impact of Pfizer's off-label promotion was the experience of Gil Shaw, a Pfizer sales representative in Oklahoma who, upon being assigned Geodon in April 2007, followed Greeson's lead and called on Oklahoma nursing homes.  Shaw was surprised to find that, when he called on primary care physicians who were treating patients in nursing homes to promote Geodon® for on-label bipolar acute mania, many physicians responded by stating they already used Geodon® primarily off-label in nursing homes to manage agitated dementia patients.  Shaw reported his findings to both his District Manager, Albert Appiah, and Regional Manager, Curt McAllister.

### 2.    <u>Promotion of Geodon® for Unapproved Dosages.</u>

212.  Pfizer regularly engaged in off-label promotion for using Geodon® beyond the FDA-approved product label's 80 mg. twice a day.  Although Pfizer had originally informed the FDA Drug Advisory Committee in 2000 that there could be adverse events if Geodon® were used beyond 160 mg each day, beginning as early as Dr. Kaye's off-label presentations in 2002, Pfizer began regularly promoting the dosing of Geodon® well beyond the product labeling.

**Filed Under Seal**
129894.00601/35873664v.4

Filed Under Seal
12989400601/35873664v.4

213. For example, on November 10, 2006, at the Pfizer POA at the Westin Hotel in St. Louis, Missouri, Regional Manager Curt McAllister urged representatives to recommend Geodon® to be used at doses above the FDA approved dose. Although the recommended dose of Geodon® is 20 to 80 mg twice daily, Pfizer instructed its sales representatives to advise physicians to prescribe much higher than the approved dosages.

**H.    PFIZER SALES REPRESENTATIVES MARKETED GEODON® TO DOCTORS TREATING PATIENTS WHO WOULD NOT USE GEODON® FOR ANY APPROVED INDICATION.**

214. Yet another off-label marketing method employed by Pfizer is to market Geodon® to doctors (primary care physicians, for example) who do not treat schizophrenia or bipolar patients or to psychiatrists who do not treat patients who can be treated using Geodon® on-label (child and adolescent psychiatrists), but may be able to be influenced by Pfizer to prescribe Geodon® off-label.

215. The solicitation of doctors who did not treat patients with conditions related to Geodon®'s FDA-approved uses was common. For example, Relator Westlock (as did all Geodon® sales representatives) had numerous child and adolescent psychiatrists included in his call-cycle to whom he was expected to sell Geodon®. This was common for other sales representatives as well. Moreover, Relator Westlock knew other colleagues were asked to market, and that those colleagues did in fact market, Geodon® to doctors who would not in the normal course prescribe Geodon® for its indicated uses.

216. As one example, on June 21, 2007, Pfizer District Manager Cheryl Shaughnessy edited Relator Westlock's call-list of doctors to detail to include Dr. Sandra Hoffman and Dr. Brid Vaid, Internal Medicine Specialists'. Per his previous discussions with these doctors, Relator Westlock knew that both of these doctors prescribed SGAs to treat patients for conditions that were not consistent with for any of Geodon®'s indicated uses. As such,

63

Relator Westlock told Shaughnessy that he refused to market Geodon® to Drs. Hoffman and Vaid because neither one of these doctors used Geodon® for its intended use, and he requested that these doctors be removed from his list of doctors to detail. In response to Relator Westlock's criticism, Shaughnessy denied that she was asking Westlock to market Geodon® for off-label uses, and told Westlock that Pfizer hoped that, by marketing Geodon® to more physicians, these physicians would see the "utility" of Geodon® in other unapproved uses. Shaughnessy also told Westlock that other sales representatives had no problem marketing Geodon® for off-label uses. Moreover, she reported Westlock's refusal to market the drug to Regional Manager Curt McAllister.

I.  **USING QUOTA AND CREDIT PROGRAMS TO INDUCE SALES TO DOCTORS AND FACILITIES WHO DO NOT USE GEODON® ON-LABEL.**

217. Moreover, Pfizer's national Geodon® sales strategy included quota and credit programs that both penalized and incentivized the sales force to sell to doctors who could not treat their patients using Geodon® on-label. Pfizer knew that these programs created a working environment that was conducive to promoting Geodon® for as many uses and as wide a patient base as possible. The quota and credit programs were instituted immediately upon Geodon®'s approval in 2001, and applied to sales representatives, District Managers, Regional Managers and Vice Presidents.

218. Pfizer's quota system required Geodon® sales representatives to detail any physician on their call list (regardless of specialty) and awarded them with bonuses based on sales of Geodon®. For example, Geodon® sales representatives that exceeded quota of, for example, 105%, would be paid additional bonus dollars and additional chances of winning award trips.

Filed Under Seal
129894.00601/35873664v.4

219. The prescribers Pfizer included in its quota and credit programs were doctors that would not normally treat patients with Geodon®'s approved indications. These doctors included child psychiatrists, primary care physicians, and geriatric physicians (including calling directly on nursing homes).

220. Included in the Geodon® sales quotas were the following providers: 1- CNS Representatives in an assigned territory would have a quota for all psychiatrists (adolescent, adult and geriatric), select hospitals (general, academic, and psychiatric (both state and private)); 2 – Primary Care Representatives would have a quota for all/most (10-40) psychiatrists (adolescent, adult and geriatric), primary care physicians, internal medicine specialists, and select hospitals (general, academic (institutional sales representative only), and select psychiatric (both state and private)) hospitals.

221. Geodon® sales quotas were based on several components: 1- the previous territory sales year revenue of Geodon® for all assigned licensed medical professionals; 2 - the previous territory sales year revenue of all SGAs for all assigned licensed medical professionals (without regard to what the SGAs were used to treat); and 3 – a corporate growth component applied to the based quota. Once the quota was set for the semester, Pfizer rarely made any adjustments to the representative's quota.

222. The accumulative quotas of the district sales representatives (8 to 14 per district) generate the District Manager's quota. The quotas of the district sales managers (8 to 12 per region) generate the Regional Manager's quota. The quotas of the regional sales managers (6 to 8 nationally) feed into the Vice-President of Sales quota and eventually up to the CEO/corporate quota.

Case 1:08-cv-11318-DPW   Document 3   Filed 08/21/2008   Page 73 of 134

223. Pfizer's quota and credit programs also influenced the selection of speakers. Speakers such as Dr. Neil Kaye who spoke about unapproved uses and for unapproved populations were selected by sales representatives, District Managers, Regional Managers and Vice Presidents for their ability to enhance quota and credit scores.

224. Finally, under pressure from Relator Westlock, Pfizer eventually announced in April 2007 that child and adolescent psychiatrists designated as such by the AMA were to be deleted from the quota and credit programs. However, Pfizer later in 2008 reversed this position because in some instances the AMA designations were not completely accurate due to multiple specialties (such as doctors with an AMA child psychiatrist designation who also treat adults).

**J.    PFIZER PROMOTED GEODON® FOR UNAPPROVED USES AS A MAINTENANCE MEDICATION IN THE LONG TERM TREATMENT OF BIPOLAR DISEASE.**

225. Despite the fact that the FDA had only approved Geodon® for short-term use for 21-day increments in bipolar patients prevalent in emergency settings not primary care settings, Pfizer directed its sales representatives to use materials that marketed Geodon® as a maintenance drug for the long-term treatment of bipolar patients. The PowerPoint presentation from the "Managing Bipolar in Primary Care" teleconference promotes Geodon® in primary care settings where the focus is on maintenance treatment, for which Geodon® is not indicated. Thus, marketing Geodon® in primary care settings is promoting Geodon® for the off-label use of long term maintenance treatment of bipolar patients.

226. In June 2007, the Pfizer Geodon® Disease Management Team (in charge of preparation of marketing materials for Geodon®), sent a DVD to all Powers District Managers to share "best practices" from the top three performing sales districts. In the video was Kevin Kirk, a Pfizer sales representative from Charleston, West Virginia. In his presentation to a

66

physician, Kirk stated, "that Geodon® works for 55 weeks in bipolar disorder patients."
However, there was no clinical data to support this, nor had Geodon® ever been approved as a
maintenance drug treatment of bipolar disorder.

227.   Thereafter, Pfizer directed all sales representatives nationwide to make a false
claim in that Geodon® treats bipolar disorder in a maintenance capacity.  Pfizer has not
conducted, nor is there published, two double-blind, placebo controlled studies to demonstrate
that Geodon® is effective as a therapy for bipolar maintenance.  By instructing representatives
to inform physicians that Geodon® is efficacious in treating bipolar Disorder for 55 weeks:

- 1 – patients may not be adequately treated for bipolar disorder and as such may
  relapse, causing physical harm to themselves and/or others;

- 2 – because long term side effects of using Geodon® in patients with bipolar
  Disorder are unknown, patients may be exposed to unknown cardiovascular risk,
  cognitive or mood impairments, as well as increased risks to movement disorders
  and other medical conditions;

- 3 –physicians are encouraged to prescribe Geodon® for such use in patients being
  reimbursed through Medicaid, Medicare/Medicaid, Medicare-D, and various private
  insurance plans, constituting fraud.

228.   Relator Westlock thereafter contacted Lisa Shrayer and Jeff Williams in Pfizer's
Compliance Department to report this blatant off-label marketing of Geodon® for extended use
in bipolar patients.

229.   Following Westlock's complaint, on September of 2007, John T. Zgomatic, Vice
President of Sales of Pfizer Worldwide Pharmaceuticals Operations, wrote a letter to the
Geodon® sales team, telling them that Geodon® was not indicated for the treatment of bipolar

Filed Under Seal
129894.00601/35873664v.4

as a long-term maintenance drug and directing them to discontinue the use of Pfizer promotional materials which promoted this off-label use.

## K.    PFIZER MADE UNSUBSTANTIATED COMPARISON CLAIMS OF THE SUPERIORITY OF GEODON®.

230.    In violation of federal law, Pfizer knowingly and deliberately falsely promoted Geodon® by the use of unsubstantiated comparative claims, comparing Geodon® with competing products Seroquel®, Abilify®, Zyprexa®, and Risperdal®. These unsubstantiated, comparative claims are prohibited by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 352, and 21 CFR § 202.1(e)(6), as well as Pfizer's own internal sales policies. The use of unsubstantiated comparative claims renders a drug "misbranded" by the FDA. Pfizer promoted these Geodon® falsehoods to physicians to induce physicians to prescribe Geodon®. Once Geodon® became "misbranded" it was no longer eligible for reimbursement by Federal Programs, including Medicaid.

231.    Additionally, Pfizer was required to provide fair and balanced information whenever it engaged in promotional activities. Fair and balanced promotional activities include written materials, as well as, oral presentations. According to federal regulations and industry standards and practices, "fair and balanced" means that whenever Pfizer made representations about Geodon®'s efficacy, it was required to also make statements about the drug's side effects.

232.    In addition, according to Pfizer's sales and marketing practices guide titled *The Field Guide*, in order to make claims concerning the superiority of Geodon®, "the claims must have been supported by at least two adequate, well-controlled studies in which were compared head-to-head using comparable dosage regimens or a single, large, well-controlled study. . . . []t is not appropriate to make comparative claims based on the data in the products' package inserts,

Filed Under Seal
129894.00601/35873664v.4

Similarly, because of the differences in trial designs, inclusion criteria and other factors, it is not permissible to compare results from two non-comparable trials."

233.    In violation of federal law, Pfizer, on innumerable occasions, knowingly and deliberately failed to give fair and balanced presentations on Geodon®. These false superiority claims about Geodon®'s efficacy were made without "substantial evidence" to support such claims. As such, any statements about Geodon®'s efficacy were false, misleading, distorted, inaccurate, unfair, imbalanced and omitted material facts Pfizer was required to disclose.

### 1.    August 17, 2006 Abilify® "Compare and Win Strategy."

234.    As an example of false comparative promotions of Geodon®, on August 17, 2006, Pfizer Regional Manager Curt McAllister sent almost 90 sales representatives a voice message telling them to use the "compare and win strategy" comparing Geodon® and Abilify®, a Bristol-Myers Squibb product. McAllister encouraged these representatives to use this compare and win strategy that he had observed Pfizer representative Mark Mannix using during a field day outing with McAllister. On the voicemail, McAllister urged these sales representatives to compare Geodon® to Abilify®, a Bristol Myers Squibb product, although there was no clinical data to support the comparison.

235.    When Relator Westlock learned of this unsupported drug to drug comparison, he called McAllister and District Manger Cheryl Shaughnessy on August 17, 2006, and reminded them that this was in direct violation of Pfizer's compliance policy and FDA regulations. McAllister replied to Westlock, copying Shaughnessy with a voicemail, acknowledging the problem and assuring Westlock that his initial message to the sales representatives urging the Geodon® to Abilify® comparisons would be corrected or retracted. Westlock later checked several times to see if a retraction had ever been made, but it was not. As a result, Westlock reminded Shaughnessy in September of 2006 that no retraction had been made. Westlock again

Filed Under Seal
129894.00601/35873664v.4

asked McAllister and Shaughnessy about the retraction on January 23, 2007. McAllister showed Westlock a retraction email that McAllister had supposedly sent out to the sales representatives. However, the Professional Healthcare Representatives, who comprise the majority of the sales representatives selling Geodon®, did not receive this retraction email. When confronted by Westlock, Shaughnessy contended that this email and a voice mail had in fact been forwarded to the sales representatives in Westlock's district; however, because Westlock never received either this email or the voicemail, he disputed that this email and/or email was ever sent.

## 2.   **November 10, 2006 "Competing to Win" POA.**

236.   In another example of unsupported comparison claims, at the November 10, 2006 POA, Competing to Win, held at the Westin Hotel in St. Louis, Missouri, Pfizer disseminated false and misleading promotional literature and marketing materials to its sales force (which would have disseminated as well nationwide to all Pfizer representatives selling Geodon® around the country), intending that the "essence of this message must be conveyed to physicians on every sales call." The goal of the POA was clear – "to compete and win against other leading atypicals."

237.   The materials provided  include marketing materials, comparing  Geodon® to Seroquel®, Geodon® to Abilify®, Geodon® to Zyprexa® and Geodon® to Risperdal®, and thereby misbranded Geodon® in violation of the FD&C Act.  The Pfizer marketing team provided sales representatives with instructional material on how to compare Geodon® to competitive products:

   a.   When comparing Geodon® to Risperdal® and Zyprexa® in patients with bipolar disorder, Pfizer marketing instructed representatives to tell physicians that Geodon® is efficacious in bipolar patients for one year, yet Geodon® has neither an indication for bipolar maintenance, nor "substantial evidence" (two peer-reviewed, double-blind placebo controlled studies) to support such claims.

Case 1:09-cv-11480-DPW   Document 1-3   Filed 09/08/09   Page 11 of 67

b.    When comparing Geodon® to Zyprexa® in schizophrenic patients, Pfizer instructed representatives to stress that Geodon® has less somnolence than Zyprexa®. However, in a Pfizer sponsored head-to-head study (Simpson) somnolence rates were comparable between Zyprexa® and Geodon®.

c.    When comparing Geodon® to Abilify®, Pfizer instructed representatives to stress that: 1– More patients using Geodon® get to remission, 2 – Geodon® is efficacious in bipolar patients for one, year yet Geodon® has neither an indication for bipolar maintenance, nor "substantial evidence" to support such claims, 3– Geodon® has switch data (open label studies) from Zyprexa® and Risperdal® to Geodon® in schizophrenia only, showing positive outcomes. Pfizer has no approved head-to-head studies comparing Geodon® and Abilify® yet Pfizer management has instructed representatives to use other comparative drug studies to demonstrate Geodon®'s benefits vs. Abilify®.

d.    When comparing Geodon® to Seroquel®, Pfizer management instructed sales representatives to utilize sales materials comparing Geodon® and Zyprexa® or Risperdal® to infer Geodon® benefits (less weight gain, less sedation, stronger efficacy, etc.) against Seroquel®. In fact, Pfizer had no head-to-head studies comparing Geodon® and Seroquel®, and as such should have instructed representatives not to engage in compare-to-win strategies between these two products.

238.    Pfizer thus deliberately violated the FDA comparative claims regulations and ignored its own compliance mandates in making unsupported comparative claims for Geodon®. In making claims about the advantages of Geodon® in relation to other competing products' weaknesses, Pfizer made a calculated decision to grow Geodon® sales even if it meant deliberately flouting FDA fair and balanced regulations and its own compliance policies.

VI.    **PFIZER KNEW THE LEGAL RISKS RELATED TO OFF-LABEL PROMOTION OF GEODON®.**

239.    Pfizer was well aware of the legal risks inherent in the unlawful marketing and promotion of its prescription drug products. In May, 2004, Pfizer entered into a Corporate Integrity Agreement ("CIA") with the United States Office of Inspector General of the Department of Health and Human Services. Pfizer signed the CIA in connection with the

Filed Under Seal
129894.00601/35873664v.4

settlement of allegations that it engaged in illegal off-label marketing of its drug product Neurontin® (the "Neurontin CIA"). The Neurontin CIA expressly incorporated measures aimed at prohibiting Pfizer from future promotion of its products for off-label uses. Pfizer's conduct as described herein constitutes flagrant, intentional and material breaches of the Neurontin CIA.

240.   The Neurontin CIA also required Pfizer to certify compliance, and to report to the government "reportable events" which are defined in the Neurontin CIA as:

> anything that involves a matter, brought to the attention of senior management at Pfizer's New York headquarters, that a reasonable person would consider a probable violation of criminal, civil, or administrative laws applicable to any Federal health care program, and/or applicable to any FDA requirements relating to the off-label promotion of drugs....

241.   There is no doubt that, following the Neurontin® criminal plea and Neurontin CIA, Pfizer and its sales representatives have been clearly aware of the legal risks the Company takes if it chooses to illegally market drug products. For example, Pfizer has issued to all its sales representatives *The Field Guide*, the Pfizer drug representative's bible on all compliance issues (also called the "Orange Manual" by company employees), *The Field Guide* describes how the sales force is expected to conduct itself when marketing a product, including what constitutes a clear violation of Pfizer policy and federal law.

242.   *The Field Guide* makes clear that sales representatives must stay on-label:

> As discussed in the Overview of this Guide, our May 2004 Corporate Integrity Agreement (CIA), arose from allegations concerning the off-label promotion of Neurontin®. Off-label promotion is taken very seriously by Pfizer and the government. In fact, Pfizer is obligated under our CIA to proactively report any instance of off-label promotion to the Office of the Inspector General (OIG).

243.   Relator Westlock alleges, upon information and belief, that Pfizer knowingly failed to completely and truthfully certify compliance with the Neurontin CIA, and failed to

Filed Under Seal
1298894.00601/35873664v.4

Filed Under Seal
129894.00601/35873664v.4

completely and truthfully report "reportable events," all as required by the Neurontin CIA. As a result, Pfizer has presented or caused to be presented to the United States a false certification or claim under U.S.C. § 3729 *et seq.*

244.   Relator Westlock alleges, on information and belief, that Pfizer failed to accurately and truthfully report its improper Geodon® marketing as described above, as required by the terms of the Neurontin CIA.

245.   The failure by Pfizer to truthfully and accurately report, or the submission of a false report, to the United States, pursuant to the Neurontin CIA, was done knowingly and deliberately, without just cause.

246.   While Pfizer was clearly aware of its compliance obligations regarding sales and marketing of its products, Pfizer senior sales, marketing, and corporate executives did everything they could to get around any such limitations in order to sell Geodon®.

247.   Pfizer's pattern of off-label promotion, misbranding and purposeful targeting of vulnerable populations such as children and the elderly is all the more alarming and reprehensible given Geodon®'s serious side effects, some of which could be fatal.

248.   As a result of Pfizer's unlawful conduct, the United States has been damaged, and continues to be damaged, by Federal Program payments for off-label and falsely promoted Geodon® prescriptions.   Upon information and belief, Geodon® off-label prescription payments made by Federal Programs total in the hundreds of millions of dollars.

## VII.   PFIZER'S FRAUDULENT MARKETING SCHEME VIOLATED FEDERAL PROGRAM LIMITATIONS.

249.   Pfizer could lawfully market Geodon® in a number of ways, including the dissemination of truthful information that complies with federal law.   Once a drug is approved by the FDA for a certain use (or "indication"), it must be promoted by the manufacturer for

that use, and that use only. Geodon® was initially FDA approved to treat schizophrenia and later for acute manic or mixed episodes of bipolar disorder. After its approval, Pfizer could only promote Geodon® to treat the then FDA-approved conditions. However, at no time could Pfizer lawfully promote Geodon® for any other non-FDA approved purpose.

250.  In violation of federal law, Pfizer knowingly and deliberately promoted Geodon® for non-FDA approved uses ("off-label" uses) that Pfizer knowingly and deliberately knew, or could reasonably foresee, would lead to violations of federal Medicaid statutes and regulations designed to restrict reimbursement to Federal Programs.

251.  Federal Programs, including the Medicaid program, also rely on the FDA's findings regarding what uses for approved drugs are safe and effective. Whether a drug that is FDA-approved for a particular use will largely determine whether a prescription for that drug will be reimbursable under Federal Programs, including the Medicaid program.

252.  In 1990, Congress passed the Budget Reconciliation Act which limited reimbursement for prescription drugs to "covered outpatient drugs." Covered outpatient drugs only include drugs used for "medically accepted indications." A medically-accepted indication is a use which has been approved by the FDA or one which is supported by specific drug reporting compendia set forth in the Medicaid statute, 42 U.S.C. § 1396r-8(k)(6). Reimbursement by Medicaid is, with only one rare exception, prohibited if the drug is not being used for a medically accepted indication. 42 U.S.C. § 1396r-8(k)(3).

253.  Congress has adopted a compendia-based system for determining appropriate Medicaid reimbursements for off-label uses of a "covered outpatient drug." Soc. Sec. Act § 1927(g)(1)(B)(i) and (k)(6) (permitting reimbursements for drug uses that "(i) are appropriate, (ii) are medically necessary, and (iii) are not likely to result in adverse medical results"). Thus,

the only way a prescription could be allowed under the Medicaid statute was if the particular off-label Geodon® indication had been approved in one of the compendia identified in § 1927(g)(1)(B)(i) to be eligible for reimbursement under Medicaid, and other federal reimbursement programs.

254.   The most commonly-available of these compendia, DRUGDEX, does not support the use of Geodon® in children, nor elderly patients with dementia.  The 2008 DRUGDEX does not support the use of Geodon® in children, nor elderly patients with dementia.  As such, all Medicaid reimbursements for Geodon® prescriptions related to pediatric or geriatric patients with dementia were not eligible for reimbursement and should not have been made.

255.   Similarly, off-label indications qualify as "medically accepted indications" for Medicare reimbursement if they appear on the identified drug reporting compendia.  Reimbursement under Medicare is only available to a physician if the services he or she provided were "medically required," and he or she certifies that the services performed were medically necessary.  42 U.S.C. § 1395n(a)(2).

## VIII.   PFIZER'S PROMOTION OF GEODON® CAUSED SUBMISSION OF OFF-LABEL CLAIMS TO FEDERAL PROGRAMS AND THE *QUI TAM* STATES.

256.   Defendant Pfizer promoted off-label indications and dosages of Geodon®, knowing they were not eligible for reimbursement because the indication or dosage was neither listed on the drug reporting compendia or the relevant fiscal intermediary's Local Coverage Determination ("LCD"), nor was it included on Geodon®'s FDA-approved product labeling.

Furthermore, Defendant Pfizer illegally promoted all off-label uses without meeting the FDA requirements, and without resubmitting Geodon® to the FDA testing and approval process as required by 21 U.S.C. § 360aaa *et seq.*  Thus, claims for reimbursement of off-label Geodon®

Filed Under Seal
129894.00601/35873664v.4

prescriptions fail to meet the eligibility requirements of Federal Programs and the *Qui Tam* States.

257.  Pfizer's off-label promotion of Geodon® resulted in reimbursement by Federal Programs and the *Qui Tam* States for numerous false claims.  For example, as the table below sets forth in detail, numerous such false claims were submitted for reimbursement to the Florida Medicaid program.  Under the Florida Medicaid Prescribed Drug Services Coverage, Limitations, and Reimbursement Handbook, in order to be reimbursed by Medicaid, a drug must be medically necessary and prescribed for medically accepted indications and dosages found in (1) the FDA-approved drug labeling ("labeling" means all labels and other written, printed, or graphic matter upon any article or any of its containers or wrappers, or accompanying such article); (2) the American Hospital Formulary Service Drug Information; (3) the United States Pharmacopeia-Drug Information; or (4) the DRUGDEX Information System.

258.  Geodon® is not FDA-approved for pediatric use, and there are no supporting citations in the specified drug compendia.  Thus, Florida Medicaid should not have paid or otherwise reimbursed for Geodon prescriptions written for pediatric uses.

259.  As a result of Pfizer's unlawful promotion of Geodon®, the Florida Agency for Health Care Administration's records show that Geodon® was prescribed for pediatric uses and paid for by Florida Medicaid.  For example, in 2005 alone, Geodon® was prescribed 4,979 times for unapproved pediatric purposes.  Florida Medicaid spent $935,584 on these off-label prescriptions.

260. The Florida Agency for Health Care Administration's records for all atypical antipsychotics, including Geodon®, show that the primary diagnosis associated with these prescriptions was for ADHD – 39.6% - not an approved indication for any antipsychotic.

261. The following table shows the breakdown of Florida Medicaid prescriptions by diagnosis.:

| Diagnosis | Number of Children | % of Children |
|---|---|---|
| Schizophrenia | 1409 | 7.2% |
| Major Depression | 1394 | 7.1% |
| Affective Disorders (other) | 3134 | 16.0% |
| Autism | 797 | 4.1% |
| Tourette's Syndrome | 90 | 0.5% |
| ADHD | 7782 | 39.6% |
| Conduct Disorder | 2127 | 10.8% |
| Depressive Disorder | 491 | 2.5% |
| Anxiety Disorder | 459 | 2.3% |
| Adjustment Disorder | 783 | 4.0% |
| Other not specified | 1163 | 5.9% |
| TOTAL | 19,629 | 100.0% |

262. From 2002-2007, Florida Medicaid spent approximately $6.5 million on Geodon® prescriptions for pediatric use, despite lacking FDA approval.

263. The Geodon® prescription claims for unapproved pediatric uses listed in the above table are the direct result of Pfizer's unlawful promotional tactics, causing the United States and the Qui Tam States to expend hundreds of millions of dollars on Geodon® prescriptions, which were ineligible for reimbursement.

**VIII.   PFIZER'S RETALIATION AGAINST RELATOR WESTLOCK.**

264. Relator Westlock was forced to resign from Pfizer on September 14, 2007.

Preceding his discharge, Relator Westlock had informed Pfizer of illegal activity, including misleading efficacy promotion of Geodon®, illegal off-label promotion and numerous compliance violations. The illegal activity includes:

Filed Under Seal
129894.00601/35873664v.4

(1) directives from his District Manager, Cheryl Shaughnessy, to market Geodon® to physicians that were known for using it for the off-label use of agitated dementia in the elderly;

(2) directives from his District Manager to minimize the side effects of Geodon®;

(3) directives from his Regional Manager and Pfizer marketing personnel to use side-by-side promotional materials to demonstrate the comparative advantages of Geodon® as opposed to Abilify®, Seroquel®, Zyprexa® and Risperdal®, absent substantial evidence supporting such claims;

(4) Pfizer's false claims regarding Pfizer's products, including Geodon®; and

(5) Pfizer requesting sales representatives to set up programs that are not within promotional guidelines, and to engage in illegal promotional activity.

265.   Relator Westlock made his reports of illegal promotion and compliance violations to multiple Pfizer managers, as well as human resources and compliance personnel.

266.   Pfizer compliance rules and the Pfizer Open Door Policy encourage representatives to express any concerns they may have to Pfizer management regarding policy without fear of retaliation. Pursuant to this Policy, and in order to support corporate interests, Relator Westlock made numerous reports of off-label marketing to Cheryl Shaughnessy (his District Manager), Curt McAllister (his Regional Manager), Amy Pitts (his Vice-President), Ian Read (President U.S. Pharmaceutical Operations) and other Pfizer Human Resources, Employment Law and Compliance personnel when presented with inappropriate or improper behavior on Pfizer's part.

267.   Specifically, in January, February, March, June, July and August, 2007, Relator Westlock used the Open Door Policy to provide the aforementioned Pfizer personnel

information regarding management activities that may have been in violation of Pfizer policies. Some of these policies include: 1) making false claims regarding Pfizer products; 2) inappropriate comparison of Pfizer products with another company's competitive products; 3) demanding that he sell Pfizer products to physicians that would not be using them for their indicated use; 4) discouraging Relator Westlock from reporting these questionable marketing practices; and 5) asking sales representatives to set up programs that were not within Pfizer's guidelines, and would be in violation of FDA regulations.

268.  In the first draft of his performance review initially given on January 17, 2007, there were statements included regarding his support of corporate compliance objectives and a recommendation that Relator Westlock be a Visiting National Guest Trainer at the Pfizer Training Center.  On February 7, 2007, Relator Westlock received a modified performance review which eliminated all statements regarding support of corporate compliance objectives, and contained disparaging and unsubstantiated comments regarding Relator Westlock's character.  Relator Westlock's invitation to act as a visiting National Guest Trainer for Geodon® was then retracted by his Curt McAllister, his Regional Manager.  Instead, Relator Westlock received a negative performance review as well as negative written feedback from Cheryl Shaughnessy and Curt McAllister, some of which was shared with other Pfizer employees.

269.  In retaliation for Relator Westlock's reporting Pfizer's inappropriate activities, in March 2007 (after reporting both further marketing and retaliation concerns to Senior Pfizer management, Human Resources, Compliance and Employment Law), Relator Westlock was placed on an unexplained three month administrative leave by Amy Pitts, his Vice-President.

Filed Under Seal
129894.00601/35873664v.4

270. When Relator Westlock returned from the Pfizer mandated three-month leave, he was informed that he had not violated any Pfizer policies, and that he was in good-standing within Pfizer.

271. Within three weeks of his return, however, Relator Westlock was further harassed by Cheryl Shaughnessy, his District Manager, who directed him to promote Geodon® ofF-label to primary care physicians, and accused him of making an unsubstantiated statement to an unspecified person.

272. As a result of reporting these inappropriate and illegal activities, Relator Westlock was repeatedly intimidated, and was subjected to a hostile work environment.

273. Unable to withstand any further such intimidation, harassment and intolerable work environment, on September 14, 2007, Relator Westlock notified Pfizer's CEO Jeffrey Kindler of his forced, involuntary resignation via email.

274. As a direct and proximate result of this unlawful and repeated harassment and retaliation, Relator Westlock has suffered emotional pain and mental anguish, together with serious economic hardship and was compelled to resign from Pfizer.

## COUNT I
## VIOLATION OF FALSE CLAIMS ACT, 31 U.S.C. § 3729, ET SEQ.

275. Relator Westlock incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

276. This is a civil action brought by Relator Westlock, on behalf of the United States of America against Defendant under the False Claims Act, 31 U.S.C. §§ 3729(a)(1) and (2).

277. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, presented or caused to be presented, and may still be presenting or

80

causing to be presented, to CMS, or other Federal Programs, false or fraudulent claims for payment, in violation of, inter alia, 31 U.S.C. § 3729(a)(1).

278.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, made, caused, or caused to be used, and may still be using or causing to be used, false or fraudulent records and/or statements to get false or fraudulent claims paid in violation of, inter alia, 31 U.S.C. § 3729(a)(2).

279.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information which supported claims to CMS, and Federal Programs, with actual knowledge of the falsity of the information that supported these claims, caused, and may still be causing, the use of false or fraudulent materials or information to support claims paid by the government.

280.  The United States of America, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid and may still be paying or reimbursing for Geodon® prescribed to patients enrolled in Federal Programs.

281.  As a result of Defendants' actions as set forth above in this complaint, the United States of America has been, and may continue to be, severely damaged.

## COUNT II
## VIOLATION OF FALSE CLAIMS ACT, 31 U.S.C. § 3729, et seq.

282.  Relator Westlock incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

283.  Pfizer's failure to report, or false reporting to the United States in accordance with the Neurontin CIA, was done deliberately, or in reckless disregard of the truth, and as a result, caused, and may still be causing, false or fraudulent records and/or statements resulting in false

Filed Under Seal
129894.00601/35873664v.4

or fraudulent claims paid by the United States in violation of, inter alia, 31 U.S.C. § 3729 et seq.

284.  As a result of Defendants' actions as set forth above, the United States of America has been, and may continue to be, severely damaged.

## COUNT III
## VIOLATION OF FALSE CLAIMS ACT 31 U.S.C. § 3729(a)(3)
## AS AGAINST ALL DEFENDANTS

285.  Relator Westlock hereby incorporates by reference all allegations set forth in this Complaint, as though fully set forth herein.

286.  By submitting false claims, as set forth above, Defendants Pfizer, Dr. Kaye, M.D., NAMI, and DOES 1 through 100, have conspired to knowingly submit, or caused or be submitted, a false or fraudulent claim to the United States for payment or approval by the government for payment.

287.  All Defendants have formed an agreement to submit each false claim.

288.  All Defendants have committed an act in furtherance of the object of this Agreement.

289.  Each Defendant has acted with the intent to defraud.

290.  As a proximate result of the aforesaid fraudulent conduct, the United States of America sustained damages in an amount to be proven at trial.

## COUNT IV
## VIOLATION OF FALSE CLAIMS ACT, 31 U.S.C. § 3730(h)
## (AS AGAINST PFIZER)

291.  Relator Westlock hereby incorporates by reference all allegations set forth in this Complaint, as though fully set forth herein.

292.  As a result of Relator Westlock's lawful acts in furtherance of protected activities investigating and reporting fraud, Pfizer retaliated against Relator Westlock.

293.  Relator Westlock's termination of employment was a direct result of Pfizer's retaliatory acts, causing Relator Westlock to suffer and continue to suffer substantial damage, in an amount to be proven at trial.

## COUNT V
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (AS AGAINST PFIZER)

294.  Relator Westlock hereby incorporates by reference allegations set forth in this Complaint, as though fully set forth herein.

295.  Pfizer's conduct toward Relator Westlock was a calculated plan to cause Relator Westlock emotional harm.  Pfizer's motive was retaliation for exposing Pfizer's violations of law and Pfizer's obligations under its Corporate Integrity Agreement.

296.  All of the acts attributed to Pfizer, taken together, were so outrageous as to be utterly intolerable in a civilized community.

297.  The emotional distress inflicted by Pfizer was severe, requiring Relator Westlock to seek medical treatment.

298.  Pfizer's extreme and outrageous conduct as alleged herein either intentionally or recklessly caused Relator Westlock to suffer severe emotional distress.

299.  Relator Westlock was damaged as a result of suffering severe emotional distress, in an amount to be proven at trial.

300.  Relator Westlock is entitled to compensatory and punitive damages.

## COUNT VI
## ARKANSAS MEDICAID FRAUD FALSE
## CLAIMS ACT, ARK. CODE ANN. § 20-77-901, et seq.

301.  Relator Westlock incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

Filed Under Seal
129894.00601/35873664v.4

302. This is a civil action brought by Relator Westlock, in the name of the State of Arkansas, against Defendants pursuant to the State of Arkansas Medicaid Fraud False Claims Act, ARK. CODE ANN. § 20-77-901, et seq.

303. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made or caused to be made, and may still be making or causing to be made, a false statement or misrepresentation of material fact on an application for any benefit or payment under the Arkansas Medicaid program, in violation of ARK. CODE ANN. § 20-77-902(1).

304. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made or caused to be made, and may still be making or causing to be made, a false statement or representation of material fact for use in determining rights to a benefit or payment, in violation of ARK. CODE ANN. § 20-77-902(2).

305. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally concealed or failed to disclose, and may still be concealing or failing to disclose, an event with an intent fraudulently to secure the benefit or payment either in a greater amount or quantity than is due or when no benefit or payment is authorized, in violation of ARK. CODE ANN. § 20-77-902(3).

306. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly offered or paid, and may still be offering or paying, remuneration, directly or indirectly, overtly

84

or covertly, in cash or in kind, in return for purchasing, ordering or arranging for, or recommending purchasing or ordering of, a good, supply or service for which payment was made, in whole or in part, under the Medicaid program, in violation of ARK. CODE ANN. § 20-77-902(7)(A)(ii).

307.  The State of Arkansas or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of Medicaid.

308.  As a result of Defendants' actions, as set forth above, the State of Arkansas or its political subdivisions has been, and may continue to be, severely damaged.

## COUNT VII
## VIOLATION OF THE STATE OF CALIFORNIA
## FALSE CLAIMS ACT, CAL. GOV'T CODE § 12650, et seq.

309.  Relator Westlock incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

310.  This is a civil action brought by Relator Westlock on behalf of the State of California against Defendants under the California False Claims Act, CAL. CODE § 12652(c).

311.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, presented, or caused to be presented to, and may still be presenting or causing to be presented to, an officer or employee of the State of California or its political subdivisions false or fraudulent claims for payment, in violation of CAL. CODE § 12651(a)(1).

312.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made

85

or used, false records or statements to get false or fraudulent claims paid in violation of CAL.

CODE § 12651(a)(2).

313. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of California or its political subdivisions in violation of CAL. CODE § 1265 1 (a)(7).

314. The State of California, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of state and state subdivision funded health insurance programs.

315. As a result of Defendants' actions as set forth above, the State of California, including its political subdivisions, has been, and may continue to be, severely damaged.

## COUNT VIII
## VIOLATION OF THE STATE OF DELAWARE FALSE CLAIMS
## AND REPORTING ACT, DEL. CODE ANN. TIT. 6 § 1201, *et seq.*

316. Relator Westlock incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

317. This is a civil action brought on behalf of Relator Westlock on behalf of the Government of the State of Delaware against Defendants under the State of Delaware's False Claims and Reporting Act, DEL. CODE ANN. tit. 6, § 1203(b).

318. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly

Filed Under Seal
129894.00601/35873664v.4

Filed Under Seal
129894.00601/35873664v.4

presented or caused to be presented, and may still be presenting or causing to be presented, directly or indirectly, to an officer or employee of the Government of the State of Delaware false or fraudulent claims for payment or approval, in violation of DEL. CODE ANN. tit. 6, §1201 (a)( 1 ).

319. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, directly or indirectly, false records or statements to get false or fraudulent claims paid or approved, in violation of DEL. CODE ANN. tit. 6, §1201(a)(2).

320. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, increase or decrease an obligation to pay or transmit money to the Government of Delaware, in violation of DEL. CODE ANN. tit. 6, § 120l(a)(7).

321. The Government of the State of Delaware, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of health care programs funded by the Government of the State of Delaware.

322. As a result of Defendants' actions, the Government of the State of Delaware has been, and may continue to be, severely damaged.

Filed Under Seal
129894.00601/35873664v.4

**COUNT IX**
**VIOLATION OF THE DISTRICT OF COLUMBIA**
**FALSE CLAIMS ACT, D.C. CODE A § 2-308.13, et seq.**

323.    Relator Westlock incorporates herein by reference the preceding paragraphs of the

Complaint as though fully set forth herein.

324.    This is a civil action brought by Relator Westlock, in the name of the District of

Columbia against Defendants under the District of Columbia False Claims Act, D.C. CODE

ANN. § 2-308.15(a).

325.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

presented, or caused to be presented, and may still be presenting or causing to be presented, to

an officer or employee of the District, a false or fraudulent claim for payment or approval, in

violation of D.C. CODE ANN. § 2-308.14(a)(1).

326.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

used or caused to be used, and may continue to use or cause to be used, false records and/or

statements to get false claims paid or approved by the District, in violation of D.C. CODE

ANN. § 2-308.14(a)(2).

327.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

made or used, or caused to be made or used, and may still be making or using or causing to be

made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or

transmit money to the District, in violation of D.C. CODE ANN. § 2-308.14(a)(7).

328.    The District of Columbia, unaware of the falsity of the claims and/or statements

made by Defendants, and in reliance upon the accuracy of these claims and/or statements, paid,

and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the District.

329.   As a result of Defendants' actions, as set forth above, the District of Columbia has been, and continues to be, severely damaged.

## COUNT X
## VIOLATION OF THE STATE OF FLORIDA
## FALSE CLAIMS ACT, FLA. STAT. 68-081, *et seq.*

330.   Relator Westlock incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

331.   This is a civil action brought by Relator Westlock on behalf of the State of Florida against Defendants under the State of Florida's False Claims Act, FLA. STAT. ANN. § 68.083(2).

332.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, to officers or employees of the State of Florida or one of its agencies false or fraudulent claims for payment or approval, in violation of FLA. STAT. ANN. § 68.082(2)(a).

333.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of Florida or one of its agencies, in violation of FLA. STAT. ANN. § 68.082(2)(b).

334.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made

89

or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Florida or one of its agencies, in violation of FLA. STAT. ANN. § 68.082 (2)( g).

335.    The State of Florida and its agencies, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of health insurance plans funded by the State of Florida or its agencies.

336.    As a result of Defendants' actions, as set forth above, the State of Florida and/or its agencies have been, and may continue to be, severely damaged.

## COUNT XI
## VIOLATION OF STATE OF GEORGIA MEDICAID
## FALSE CLAIMS ACT, GA. CODE ANN. § 49-4-168 (2007), *et seq.*

337.    Relator Westlock incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

338.    This is a civil action brought by Relator Westlock, in the name of the State of Georgia, against Defendants pursuant to the State of Georgia Medicaid Fraud False Claims Act, GA. CODE ANN. § 49-4-168 (2007), *et seq.*

339.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made or caused to be made, and may still be making or causing to be made, a false statement or misrepresentation of material fact on an application for any benefit or payment under the Georgia Medicaid program, in violation of GA. CODE ANN. § 49-4-168 (2007).

90

340.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made or caused to be made, and may still be making or causing to be made, a false statement or representation of material fact for use in determining rights to a benefit or payment, in violation of GA. CODE ANN. § 49-4-168 (2007).

341.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally concealed or failed to disclose, and may still be concealing or failing to disclose, an event with an intent fraudulently to secure the benefit or payment either in a greater amount or quantity than is due or when no benefit or payment is authorized, in violation of GA. CODE ANN. § 49-4-168 (2007).

342.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly offered or paid, and may still be offering or paying, remuneration, directly or indirectly, overtly or covertly, in cash or in kind, in return for purchasing, ordering or arranging for, or recommending purchasing or ordering of, a good, supply or service for which payment was made, in whole or in part, under the Medicaid program, in violation of GA. CODE ANN. § 49-4-168 (2007).

343.   The State of Georgia or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of Medicaid.

Filed Under Seal
129894.00601/35873664v.4

344.  As a result of Defendants' actions, as set forth above, the State of Georgia or its political subdivisions has been, and may continue to be, severely damaged.

## COUNT XII
## VIOLATION OF THE STATE OF HAWAII FALSE CLAIMS ACT
## FALSE CLAIMS TO THE STATE,
## HAWS REV. STAT. § 661-21, *et seq.*

345.  Relator Westlock incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

346.  This is a civil action brought by Relator Westlock on behalf of the State of Hawaii and its political subdivisions against Defendants under the State of Hawaii's False Claims Act - False Claims to the State, HAW. REV. STAT. § 661-25.

347.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, to officers or employees of the State of Hawaii, or its political subdivisions, false or fraudulent claims for payment or approval, in violation of HAW. REV. STAT. § 61-21(a)(l).

348.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made and used, and may still be making, using or causing to be made or used, false records or statements to get false or fraudulent claims paid or approved by the State of Hawaii, or its political subdivisions, in violation of HAW. REV. STAT. § 661-21(a)(2).

349.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made

92

Filed Under Seal
129894.00601/35873664v.4

or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Hawaii, or its political subdivisions, in violation of HAW. REV. STAT. § 661-21(a)(7).

350.  The State of Hawaii, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance upon the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug- related management services for recipients of state funded health insurance programs.

351.  As a result of Defendants' actions, as set forth above, the State of Hawaii and/or its political subdivisions have been, and may continue to be, severely damaged.

## COUNT XII
## VIOLATION OF THE STATE OF INDIANA FALSE CLAIMS
## AND WHISTLEBLOWER PROTECTION ACT,
## IND. CODE § 5-11-5.5, et seq.

352.  Relator Westlock incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

353.  This is a civil action brought by Relator Westlock on behalf of the State of Indiana against Defendants under the State of Indiana False Claims and Whistleblower Protection Act, IND. CODE ANN. § 5-11-5.5-4(a).

354.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally presented, or caused to be presented, and may still be presenting or causing to be presented, a false claim for payment or approval, in violation of IND. CODE ANN. § 5-11-5.5-2(b)(1.

Filed Under Seal
129894.00601/35873664v.4

Filed Under Seal
129894.00601/35873664v.4

355.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made, used, or caused to be made or used, a false record or statement to obtain payment or approval of false claims by the State of Indiana, in violation of IND. CODE ANN. § 5-11-5.5-2(b)(2).

356.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements to avoid an obligation to pay or transmit money to the State of Indiana, in violation of IND. CODE ANN. § 5-11-5.5-2(a)(6).

357.  The State of Indiana, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of those claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of state funded health insurance programs.

358.  As a result of Defendants' actions, as set forth above, the State of Indiana has been, and may continue to be, severely damaged.

## COUNT XIV
## VIOLATION OF THE STATE OF ILLINOIS
## WHISTLEBLOWER REWARD AND PROTECTION ACT,
## 740 ILL. COMP. STAT. ANN. 175/1, et seq.

359.  Relator Westlock incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

360.   This is a civil action brought by Relator Westlock on behalf of the State of Illinois against Defendants under the State of Illinois Whistleblower Reward and Protection Act, 740 ILL. COMP. STAT. ANN. 175/4(b).

361.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented, or caused to be presented, and may still be presenting or causing to be presented, to an officer or employee of the State of Illinois or a member of the Illinois National Guard a false or fraudulent claim for payment or approval, in violation of 740 ILL. COMP. STAT. ANN. 175/3(a)(I).

362.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State of Illinois, in violation of 740 ILL. COMP. STAT. ANN. 175/3(a)(2).

363.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using, or causing to be made or used, false records or statements to conceal, avoid or decrease an obligation to pay or transmit money to the State of Illinois, in violation of 740 ILL. COMP. STAT. ANN. 175/3(a)(7).

364.   The State of Illinois, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of those claims and/or statements, paid, and

95

Filed Under Seal
129894.00601/35873664v.4

may continue to pay, for prescription drugs and prescription drug-related management services

for recipients of state funded health insurance programs.

365.  As a result of Defendants' actions, as set forth above, the State of Illinois has

been, and may continue to be, severely damaged.

## COUNT XV
## VIOLATION OF THE STATE OF LOUISIANA
## MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW,
## LA. REV. STAT. § 46:437.1, et seq.

366.  Relator Westlock incorporates herein by reference the preceding paragraphs of the

Complaint as though fully set forth herein.

367.  This is a civil action brought by Plaintiff, Relator, on behalf of the State of

Louisiana's medical assistance programs against Defendants under the State of Louisiana

Medical Assistance Programs Integrity Law, LA. REV. STAT. § 46:439.1.

368.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

presented, or caused to be presented, and may still be presenting or causing to be presented,

false or fraudulent claims, in violation of LA. REV. STAT. § 46:438.3(A).

369.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

engaged in misrepresentation, and may still be engaging in misrepresentation, to obtain, or

attempt to obtain, payment from medical assistance programs funds, in violation of LA. REV.

STAT. § 46:438.3(B).

370.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

submitted, and may continue to submit, claims for goods, services or supplies which were

medically unnecessary or which were of substandard quality or quantity, in violation of LA. REV. STAT. § 46:438.3 (D).

371.   The State of Louisiana, its medical assistance programs, political subdivisions and/or the Department, unaware of the falsity of the claims and/or statements made by Defendants, or their actions as set forth above, acted in reliance, and may continue to act in reliance, on the accuracy of Defendants' claims and/or statements in paying for prescription drugs and prescription drug-related management services for medical assistance program recipients.

372.   As a result of Defendants' actions, the State of Louisiana, its medical assistance programs, political subdivisions and/or the Department have been, and may continue to be, severely damaged.

## COUNT XVI
## VIOLATION OF THE COMMONWEALTH OF MASSACHUSETTS
## FALSE CLAIMS ACT, MASS LAWS ANN. Ch. 12, § 5A, et seq.

373.   Relator Westlock incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

374.   This is a civil action brought by Relator Westlock on behalf of the Commonwealth of Massachusetts against Defendants under the Massachusetts False Claims Act, MASS. LAWS ANN. ch. 12, § 5C(2).

375.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, a false claim for payment or approval, in violation of MASS. LAWS ANN., ch. 12, § 5B(1).

376.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly

97

made or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to obtain payment or approval of claims by the Commonwealth of Massachusetts or its political subdivisions in violation of MASS. LAWS ANN. ch. 12, § 5B(2).

377. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the Commonwealth of Massachusetts or one of its political subdivisions, in violation of MASS. LAWS ANN. ch. 12, § 5B(8).

378. The Commonwealth of Massachusetts, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the state or its political subdivisions.

379. As a result of Defendants' actions, as set forth above, the Commonwealth of Massachusetts or its political subdivisions have been, and may continue to be, severely damaged.

**COUNT XVII**
**VIOLATION OF THE STATE OF MICHIGAN MEDICAID**
**FALSE CLAIMS ACT,**
**MICH. COMP. LAWS SERV. § 400.601, et seq.**

380. Relator Westlock incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

98

Filed Under Seal
129894.00601/35873604v.4

381.    This is a civil action brought by Relator Westlock in the name of the State of

Michigan against Defendants under the State of Michigan Medicaid False Claims Act, MICH.

COMP. LAWS SERV. § 400.610a(l).

382.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

made or caused to be made, and may still be making or causing to be made, a false statement or

false representation of a material fact in an application for Medicaid benefits, in violation of

MICH. COMP. LAWS. SERV. § 400.603(1).

383.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

made or cause to be made a false statement or false representation of a material fact for use in

determining rights to a Medicaid benefit, in violation of MICH. COMP. LAWS. SERV. §

400.603(2).

384.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

concealed or failed to disclose, and may still be concealing or failing to disclose, an event

affecting its initial or continued right to receive a Medicaid benefit or the initial or continued

right of any other person on whose behalf Defendants has applied for or is receiving a benefit

with intent to obtain a benefit to which Defendants are not entitled or in an amount greater than

that to which Defendants are entitled, in violation of MICH. COMP. LAWS. SERV. §

400.603(3).

385.    Defendants, in possession of facts under which they are aware or should be aware

of the nature of their conduct and that their conduct is substantially certain to cause the

99

Filed Under Seal
1298940.0601/3587366v.4

payment of a Medicaid benefit, knowingly presented or made or caused to be presented or made, and may still be presenting or causing to be presented a false claim under the social welfare act, Act No. 280 of the Public Acts of 1939, as amended, in violation of MICH. COMP. LAWS. SERV. § 400.607(1).

386.    The State of Michigan, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of Medicaid.

387.    As a result of Defendants' actions, as set forth above, the State of Michigan or its political subdivisions have been, and may continue to be, severely damaged.

**COUNT XVIII**
**VIOLATION OF STATE OF MONTANA FALSE**
**CLAIMS ACT, MONT. CODE ANN. § 17-8-401, et seq.**

388.    Relator Westlock incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

389.    This is a civil action brought by Relator Westlock on behalf of the State of Montana against Defendants under the State of Montana False Claims Act, MONT. CODE ANN. § 17-8-406(1).

390.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, a false claim for payment or approval, in violation of MONT. CODE ANN. § 17-8-403(1)(a).

391.    Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made

100

or used, false records or statements to get a false claim paid or approved, in violation of

MONT. CODE ANN. § 17-8-403(1)(b).

392. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

made, used, or caused to be made or used, and may still be making, using or causing to be

made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or

transmit money to the State of Montana or one of its political subdivisions, in violation of

MONT. CODE ANN. § 17-8-403(1)(g).

393. The State of Montana, or its political subdivisions, unaware of the falsity of the

claims and/or statements made by Defendants, and in reliance on the accuracy of these claims

and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-

related management services for recipients of health insurance programs funded by the state or

its political subdivisions.

394. As a result of Defendants' actions, as set forth above, the State of Montana or its

political subdivisions have been, and may continue to be, severely damaged.

## COUNT XIX
### VIOLATION OF STATE OF NEW HAMPSHIRE MEDICAID
### FALSE CLAIMS ACT, N.H. REV. STAT. ANN. § 167:61-b, et. seq.

395. Relator Westlock incorporates herein by reference the preceding paragraphs of the

Complaint as though fully set forth herein.

396. This is a civil action brought by Relator Westlock on behalf of the State of New

Hampshire against Defendants under the State of New Hampshire Medicaid False Claims Act,

N.H. REV. STAT. ANN. § 167:61-cII.(a).

397. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

Filed Under Seal
129894.00601/35873664v.4

presented or caused to be presented, and may still be presenting or causing to be presented, a false claim for payment or approval, in violation of N.H. REV. STAT. ANN. § 167:61-b1.(a).

398.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get a fake claim paid or approved, in violation of N.H. REV. STAT. ANN. § 167:61-b1.(b).

399.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of New Hampshire or one of its political subdivisions, in violation of N.H. REV. STAT. ANN. § 167:61-b1.(e).

400.  The State of New Hampshire, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the state or its political subdivisions.

401.  As a result of Defendants' actions, the State of New Hampshire or its political subdivisions have been, and may continue to be, severely damaged.

## COUNT XX
## VIOLATION OF STATE OF NEW JERSEY
## FALSE CLAIMS ACT, N.J. STAT. ANN. § 2:65 (2007), *et seq.*

402.  Relator Westlock incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

102

403.   This is a civil action brought by Relator Westlock, in the name of the State of

New Jersey, against Defendants pursuant to the State of New Jersey Fraud False Claims Act,

N.J. STAT. ANN. § 265 (2007), *et seq.*

404.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

or intentionally made or caused to be made, and may still be making or causing to be made, a

false statement or misrepresentation of material fact on an application for any benefit or

payment under the New Jersey Medicaid program, in violation of N.J. STAT. ANN. § 265

(2007).

405.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

or intentionally made or caused to be made, and may still be making or causing to be made, a

false statement or representation of material fact for use in determining rights to a benefit or

payment, in violation of N.J. STAT. ANN. § 265 (2007).

406.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

or intentionally concealed or failed to disclose, and may still be concealing or failing to

disclose, an event with an intent fraudulently to secure the benefit or payment either in a

greater amount or quantity than is due or when no benefit or payment is authorized, in violation

of N.J. STAT. ANN. § 265 (2007).

407.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

offered or paid, and may still be offering or paying, remuneration, directly or indirectly, overtly

Filed Under Seal
129894.00601/35873664v.4

or covertly, in cash or in kind, in return for purchasing, ordering or arranging for, or recommending purchasing or ordering of, a good, supply or service for which payment was made, in whole or in part, under the Medicaid program, in violation of N.J. STAT. ANN. § 265 (2007).

408.   The State of New Jersey or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of Medicaid.

409.   As a result of Defendants' actions, as set forth above, the State of New Jersey or its political subdivisions has been, and may continue to be, severely damaged.

## COUNT XXI
## VIOLATION OF STATE OF NEW MEXICO MEDICAID
## FALSE CLAIMS ACT, N.M STAT. ANN. § 27-14-1, *et seq.*

410.   Relator Westlock incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

411.   This is a civil action brought by Relator Westlock on behalf of the State of New Mexico against Defendants under the State of New Mexico Medicaid False Claims Act, N.M. STAT. ANN. § 27-14-7(B).

412.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, a false or fraudulent claim for payment under the Medicaid program, in violation of N.M. STAT. ANN. § 27-14-4A.

413.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly

Filed Under Seal
129894.00601/35873664v.4

414.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get a false or fraudulent claim paid or approved, in violation of N.M. STAT. ANN. § 27-14-4C.

415.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of New Mexico or one of its political subdivisions, in violation of N.M. STAT. ANN. § 27-14-4E.

416.   The State of New Mexico, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug- related management services for recipients of health insurance programs funded by the state or its political subdivisions.

417.   As a result of Defendants' actions, as set forth above, the State of New Mexico or its political subdivisions have been, and may continue to be, severely damaged.

presented, or caused to be presented, and may be continuing to present or causing to be presented a claim for payment under the Medicaid program that is not authorized or is not eligible for benefit under the Medicaid program, in violation of N.M. STAT. ANN. § 27-14-4B.

## COUNT XXII
## VIOLATION OF THE STATE OF NEW YORK
## FALSE CLAIMS ACT, N.Y. CLS. ST. FIN. § 187 *et seq.*

418.  Relator Westlock incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

419.  This is a civil action brought by Relator Westlock on behalf of the State of New York against Defendants under the State of New York False Claims Act, N.Y. CLS St. Fin. § 190.2.

420.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, a false claim for payment or approval, in violation of N.Y. CLS St. Fin. § 189(a).

421.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get a false claim paid or approved, in violation of N.Y. CLS St. Fin. § 189(b).

422.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of New York or one of its political subdivisions, in violation of N.Y.CLS St. Fin. § 189(g).

423.  The State of New York, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims

and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the state or its political subdivisions.

424.   As a result of Defendants' actions, as set forth above, the State of New York or its political subdivisions have been, and may continue to be, severely damaged.

### COUNT XXIII
### VIOLATION OF FALSE CLAIMS TO STATE OR LOCAL
### SUBMISSION OF THE STATE OF NEVADA
### GOVERNMENT ACT, NEV. REV. STAT. ANN. § 357.010, et seq.

425.   Relator Westlock incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

426.   This is a civil action brought by Relator Westlock on behalf of the State of Nevada against Defendants under the State of Nevada Submission of False Claims to State or Local Government Act, NEV. REV. STAT. ANN. § 357.080(1)

427.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, a false claim for payment or approval, in violation of NEV. REV. STAT. ANN. § 357.040(1)(a).

428.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to obtain payment or approval for false claims in violation of NEV. REV. STAT. ANN. § 357.040(1)(b).

429.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly

107

made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the State of Nevada or one of its political subdivisions, in violation of NEV. REV. STAT. ANN. § 357.040(1)(g).

430. The State of Nevada, or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of health insurance programs funded by the state or its political subdivisions.

431. As a result of Defendants' actions, as set forth above, the State of Nevada or its political subdivisions have been, and may continue to be, severely damaged.

<u>COUNT XXIV</u>
<u>VIOLATION OF STATE OF OKLAHOMA MEDICAID</u>
<u>FALSE CLAIMS ACT, OKLA. STAT. tit. 63, § 5053 (2007), *et seq.*</u>

432. Relator Westlock incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

433. This is a civil action brought by Relator Westlock, in the name of the State of Oklahoma, against Defendants pursuant to the State of Oklahoma Medicaid Fraud False Claims Act, OKLA. STAT. tit. 63, § 5053 (2007), *et seq.*

434. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made or caused to be made, and may still be making or causing to be made, a false statement or misrepresentation of material fact on an application for any benefit or payment under the Oklahoma Medicaid program, in violation of OKLA. STAT. tit. 63, § 5053 (2007).

Filed Under Seal
129894.00601/35873664v.4

455.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made or caused to be made, and may still be making or causing to be made, a false statement or representation of material fact for use in determining rights to a benefit or payment, in violation of OKLA. STAT. tit. 63, § 5053 (2007).

436.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally concealed or failed to disclose, and may still be concealing or failing to disclose, an event with an intent fraudulently to secure the benefit or payment either in a greater amount or quantity than is due or when no benefit or payment is authorized, in violation of OKLA. STAT. tit. 63, § 5053 (2007).

437.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly offered or paid, and may still be offering or paying, remuneration, directly or indirectly, overtly or covertly, in cash or in kind, in return for purchasing, ordering or arranging for, or recommending purchasing or ordering of, a good, supply or service for which payment was made, in whole or in part, under the Medicaid program, in violation of OKLA. STAT. tit. 63, § 5053 (2007).

438.   The State of Oklahoma or its political subdivisions, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of Medicaid.

Filed Under Seal
129894.00601/35873664v.4

439. As a result of Defendants' actions, as set forth above, the State of Oklahoma or its political subdivisions has been, and may continue to be, severely damaged.

## COUNT XXV
### VIOLATION OF STATE OF RHODE ISLAND
### FALSE CLAIMS ACT, R.I. GEN. LAWS § 9-1.1-1 (2008), *et seq.*

440. Relator Westlock incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

441. This is a civil action brought by Relator Westlock, in the name of the State of Georgia, against Defendants pursuant to the State of Rhode Island Fraud False Claims Act, R.I. GEN. LAWS § 9-1.1-1 (2008) *et seq.*

442. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made or caused to be made, and may still be making or causing to be made, a false statement or misrepresentation of material fact on an application for any benefit or payment under the Rhode Island Medicaid program, in violation of R.I. GEN. LAWS § 9-1.1-1 (2008).

443. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made or caused to be made, and may still be making or causing to be made, a false statement or representation of material fact for use in determining rights to a benefit or payment, in violation of R.I. GEN. LAWS § 9-1.1-1 (2008).

444. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally concealed or failed to disclose, and may still be concealing or failing to disclose, an event with an intent fraudulently to secure the benefit or payment either in a

Filed Under Seal
129894.00601/35873664v.4

greater amount or quantity than is due or when no benefit or payment is authorized, in violation
of R.I. GEN. LAWS § 9-1.1-1 (2008).

445.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of
the information involved, or with actual knowledge of the falsity of the information, knowingly
offered or paid, and may still be offering or paying, remuneration, directly or indirectly, overtly
or covertly, in cash or in kind, in return for purchasing, ordering or arranging for, or
recommending purchasing or ordering of, a good, supply or service for which payment was
made, in whole or in part, under the Medicaid program, in violation of R.I. GEN. LAWS § 9-
1.1-1 (2008).

446.   The State of Rhode Island or its political subdivisions, unaware of the falsity of
the claims and/or statements made by Defendants, and in reliance on the accuracy of these
claims and/or statements, paid, and may continue to pay, for prescription drugs and
prescription drug- related management services for recipients of Medicaid.

447.   As a result of Defendants' actions, as set forth above, the State of Rhode Island or
its political subdivisions has been, and may continue to be, severely damaged.

## COUNT XXVI
## VIOLATION OF THE STATE OF TENNESSEE MEDICAID
## FALSE CLAIMS ACT, TENN. CODE *ANN. § 71-5-181 et seq.*

448.   Relator Westlock incorporates herein by reference the preceding paragraphs of the
Complaint as though fully set forth herein.

449.   This is a civil action brought by Relator Westlock in the name of the State of
Tennessee against Defendants under the Tennessee Medicaid False Claims Act, TENN. CODE
ANN. § 71-5-183(a).

450.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of
the information involved, or with actual knowledge of the falsity of the information, knowingly

111

presented or caused to be presented, and may still be presenting or causing to be presented, to the State of Tennessee a claim for payment under the Medicaid program knowing it was false or fraudulent, in violation of TENN. CODE ANN. § 71-5-182(a)(1)(A).

451.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, records or statements to get false or fraudulent claims under the Medicaid program paid for or approved by the State of Tennessee with knowledge that such records or statements were false, in violation of TENN. CODE ANN. § 71-5-182(a)(1)(B).

452.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, records or statements to conceal, avoid or decrease an obligation to pay or transmit money to the State of Tennessee, relative to the Medicaid program, with knowledge that such records or statements were false, in violation of TENN. CODE ANN. § 71-5-182(a)(1)(D).

453.   The State of Tennessee, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of the Medicaid program.

454.   As a result of Defendants' actions, as set forth above, the State of Tennessee has been, and may continue to be, severely damaged.

Filed Under Seal
129894.00601/35873664v.4

Filed Under Seal
129894.00601/35873664v.4

## COUNT XXVII
## VIOLATION OF THE STATE OF TEXAS HUMAN
## RESOURCES CODE, TEX. HUM. RES. CODE § 36.001 *et seq.*

455.   Relator Westlock incorporates herein by reference the preceding paragraphs of the

Complaint as though fully set forth herein.

456.   This is a civil action brought by Relator Westlock in the name of the State of

Texas against Defendants under the State of Texas Human Resources Code, Medicaid Fraud

Prevention Chapter, TEX. HUM. RES. CODE § 36.101(a).

457.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

or intentionally made or caused to be made, and may still be making or causing to be made, a

false statement or misrepresentation of material fact on an application for a contract, benefit or

payment under a Medicaid program, in violation of TEX. HUM. RES. CODE § 36.101(a).

458.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

or intentionally made or caused to be made, and may still be making or causing to be made, a

false statement or misrepresentation of material fact that is intended to be used, and has been

used, to determine a person's eligibility for a benefit or payment under the Medicaid program,

in violation of TEX. HUM. RES. CODE § 36.002(1).

459.   Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of

the information involved, or with actual knowledge of the falsity of the information, knowingly

or intentionally made, caused to be made, induced or sought to induce, and may still be

making, causing to be made, inducing or seeking to induce, the making of a false statement or

misrepresentation of material fact concerning information required to be provided by a federal

or state law, rule, regulation or provider agreement pertaining to the Medicaid program in violation of TEX. HUM. RES. CODE § 36.002(4)(B).

460. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly or intentionally made a claim under the Medicaid program for a service or product that was inappropriate, in violation of TEX. HUM. RES. CODE § 36.002(7)(C),

461. The State of Texas, its political subdivisions or the Department, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance on the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of Medicaid.

462. As a result of Defendants' actions, as set forth above, the State of Texas, its political subdivisions or the Department has been, and may continue to be, severely damaged.

## COUNT XXVIII
## VIOLATION OF THE COMMONWEALTH OF VIRGINIA FRAUD
## AGAINST TAXPAYERS ACT, VA. CODE ANN. § 8.01-216.1, *et seq.*

463. Relator Westlock incorporates herein by reference the preceding paragraphs of the Complaint as though fully set forth herein.

464. This is a civil action brought by Relator Westlock on behalf of the Commonwealth of Virginia against Defendants under the Commonwealth of Virginia Fraud Against Taxpayers Act, VA. CODE ANN. § 8.01-216.5, *et seq.*

465. Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly presented or caused to be presented, and may still be presenting or causing to be presented, to an officer or employee of the Commonwealth, a false or fraudulent claim for payment or approval, in violation of VA. CODE ANN. § 8.01-216.3(A)(l).

114

466.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used, or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to get false or fraudulent claims paid or approved by the Commonwealth, in violation of VA. CODE ANN. § 8.01-216.3(A)(2).

467.  Defendants, in reckless disregard or deliberate ignorance of the truth or falsity of the information involved, or with actual knowledge of the falsity of the information, knowingly made, used or caused to be made or used, and may still be making, using or causing to be made or used, false records or statements to conceal, avoid, or decrease an obligation to pay or transmit money to the Commonwealth, in violation of VA. CODE ANN. § 8.01-216.3(A)(7).

468.  The Commonwealth of Virginia, unaware of the falsity of the claims and/or statements made by Defendants, and in reliance upon the accuracy of these claims and/or statements, paid, and may continue to pay, for prescription drugs and prescription drug-related management services for recipients of state funded health insurance programs.

469.  As a result of Defendants' actions, as set forth above, the Commonwealth of Virginia, its political subdivisions or the Department has been, and may continue to be, severely damaged.

**WHEREFORE,** Relator Westlock pray for judgment against Defendants as follows:

A.      That Defendants be ordered to cease and desist from submitting any more false claims, or further violating 31 U.S.C. § 3729, *et seq.*; ARK. CODE ANN. § 20-77-901, *et seq.*, CAL. CODE § 12650, *et seq.*, DEL. CODE ANN. tit. 6, § 1201, *et seq.*, D.C. CODE ANN. § 2-308.13, *et seq.*, FLA. STAT. ANN. § 68.081, *et seq.*, GA. CODE ANN. § 49-4-168, *et seq.*, HAW. REV. STAT. § 661-21, *et seq.*, IND. CODE ANN. § 5-11-5.5, *et seq.*, 740 ILL. COMP.

STAT. ANN. § 1751, *et seq.*, LA. REV. STAT. § 437.1, *et seq.*, MASS. LAWS ANN. Ch. 12, §5A, *et seq.*, MICH. COMP. LAWS SERV. § 400.601, *et seq.*, MONT. CODE ANN. § 17-8-401, *et seq.*, N.H. REV. STAT. ANN. § 167:61-b, *et seq.*, N.J. STAT ANN. § 265, *et seq.*, N.M. STAT. ANN. § 27-14-1, *et seq.*, N.Y. CLS ST. FIN. § 187, *et seq.*, NEV. REV. STAT. ANN. § 357.010, *et seq.*, OKLA. STAT. tit. 63, § 5053, *et seq.*, R.I. GEN. LAWS § 9-1.1-1, *et seq.*, TENN. CODE ANN. § 71-5-181, *et seq.*, TEX. HUM. RES. CODE § 36.001, *et seq.*, and. VA. CODE ANN. § 8.01-216.1, *et seq.*

B.      That judgment be entered in Relator Westlock's favor and against Defendants in the amount of each and every false or fraudulent claim, multiplied as provided for in 31 U.S.C. § 3729(a), plus a civil penalty of not less than five thousand five hundred dollars ($5,500) or more than eleven thousand dollars ($11,000) per claim as provided by 31 U.S.C. § 3729(a), to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

C.      That Relator Westlock be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) and § 3730(h), ARK. CODE ANN. § 20-77-911, CAL. CODE § 12652(g), DEL. CODE ANN. tit. 6, § 1205, D.C. CODE ANN. § 2-308.15(f), FLA. STAT. ANN. § 68.085, GA. CODE ANN. § 49-4-168, HAW. REV. STAT. § 661-27, IND. CODE ANN. § 5-11-5.5-6(a), 740 ILL. COMP. STAT. ANN. 175/4(d), LA. REV. STAT. § 439.4, MASS. GEN. LAWS ch. 12, § 5F, MICH. COMP. LAWS SERV. § 400.610a(9), MONT. CODE ANN. § 17-8-410, N.H. REV. STAT. ANN. § 167:61-e, N.J. STAT ANN. § 265, N.M. STAT. ANN. § 27-14-9, N.Y. CLS St. Fin. § 190.6, NEV. REV. STAT. ANN. § 357.220, OKLA. STAT. tit. 63, §

5053, R.I. GEN. LAWS § 9-1.1-1, TENN. CODE ANN. § 71-5-183, TEX. HUM. RES. CODE § 36.110, and VA. CODE ANN. § 8.01-216.7.

D.      That judgment be entered in Relator Westlock's favor and against Defendants in the amount of the damages sustained by the State of Arkansas or its political subdivisions multiplied as provided for in ARK. CODE ANN. § 20-77-903(a)(l), plus a civil penalty of not less than five thousand dollars ($5,000) or more than ten thousand dollars ($10,000) per claim as provided by ARK. CODE ANN. § 20-77-903(a)(l), to the extent such multiplied penalties shall fairly compensate the State of Arkansas or its political subdivisions for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

E.      That judgment be entered in Relator Westlock's favor and against Defendants in the amount of the damages sustained by the State of California or its political subdivisions multiplied as provided for in CAL. CODE § 12651(a), plus a civil penalty of no more than ten thousand dollars ($10,000) per claim as provided by CAL. CODE § 12651(a), to the extent such multiplied penalties shall fairly compensate the State of California or its political subdivisions for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

F.      That judgment be entered in Relator Westlock's favor and against Defendants in the amount of the damages sustained by the Government of the State of Delaware multiplied as provided for in DEL. CODE ANN. tit. 6, §1201(a), plus a civil penalty of not less than five thousand five- hundred dollars ($5,500) or more than eleven thousand dollars ($11,000) for each act in violation of the State of Delaware False Claims and Reporting Act, as provided by DEL. CODE ANN. tit. 6, § 1201(a), to the extent such multiplied penalties shall fairly compensate the

Filed Under Seal
129894.00601/35873664v.4

Government of the State of Delaware for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

G.      That judgment be entered in Relator Westlock's favor and against Defendants in the amount of the damages sustained by the District of Columbia, multiplied as provided for in D.C. CODE ANN. § 2-308.14(a), plus a civil penalty of not less than five thousand dollars ($5,000) or more than ten thousand dollars ($10,000) for each false claim, and the costs of this civil action brought to recover such penalty and damages, as provided by D.C. CODE ANN. § 2-308.14(a), to the extent such multiplied penalties shall fairly compensate the District of Columbia for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

H.      That judgment be entered in Relator Westlock's favor and against Defendants in the amount of the damages sustained by the State of Florida or its agencies multiplied as provided for in FLA. STAT. ANN. § 68.082, plus a civil penalty of not less than five thousand dollars ($5,000) or more than ten thousand dollars ($10,000) as provided by FLA. STAT. ANN. § 68.082, to the extent such multiplied penalties shall fairly compensate the State of Florida or its agencies for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

I.      That judgment be entered in Relator Westlock's favor and against Defendants in the amount of the damages sustained by the State of Georgia or its political subdivisions multiplied as provided for in GA. CODE ANN. § 49-4-168, plus a civil penalty of not less than fifteen (15) percent or more than twenty five (25) percent of the proceeds per claim as provided by GA. CODE ANN. § 49-4-168.2, to the extent such multiplied penalties shall fairly

118

Case 1:09-cv-11480-DPW   Document 1-3   Filed 09/08/09   Page 59 of 67

compensate the State of Georgia or its political subdivisions for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

J.      That judgment be entered in Relator Westlock's favor and against Defendants in the amount of the damages sustained by the State of Hawaii, multiplied as provided for in HAW. REV. STAT. § 661-21(a), plus a civil penalty of not less than five thousand dollars ($5,000) or more than ten thousand dollars ($10,000) as provided by HAW. REV. STAT. § 661-21(a), to the extent such multiplied penalties shall fairly compensate the State of Hawaii for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

K.      That judgment be entered in Relator Westlock's favor and against Defendants in the amount of the damages sustained by the State of Indiana, multiplied as provided for in IND. CODE ANN. § 5-11-5.5-2, plus a civil penalty of at least five thousand dollars ($5,000) as provided by IND. CODE ANN. § 5-11-5.5-2, to the extent such multiplied penalties shall fairly compensate the State of Indiana for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

L.      That judgment be entered in Relator Westlock's favor and against Defendants in the amount of the damages sustained by the State of Illinois, multiplied as provided for in 740 ILL. COMP. STAT. ANN. 175/3(a), plus a civil penalty of not less than five thousand dollars ($5,000) or more than ten thousand dollars ($10,000), and the costs of this civil action brought to recover such damages and penalty, as provided by 740 ILL. COMP. STAT. ANN. 175/3(a), to the extent such multiplied penalties shall fairly compensate the State of Illinois for losses

Filed Under Seal
129894.00601/35873664v.4

resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

M.     That judgment be entered in Relator Westlock's favor and against Defendants in the amount of the damages sustained by Louisiana's medical assistance programs, multiplied as provided for in LA. REV. STAT § 438.6(B)(2), plus a civil penalty of no more than ten thousand dollars ($10,000) per violation or an amount equal to three times the value of the illegal remuneration, whichever is greater, as provided for by LA. REV. STAT § 438.6(B)(1), plus up to ten thousand dollars ($10,000) for each false or fraudulent claim, misrepresentation, illegal remuneration, or other prohibited act, as provided by LA. REV. STAT § 438.6(C)(1)(a), plus payment of interest on the amount of the civil fines imposed pursuant to Subsection B of § 438.6 at the maximum legal rate provided by La. Civil Code Art. 2924 from the date the damage occurred to the date of repayment, as provided by LA. REV. STAT. § 438.6(C)(1)(b), to the extent such multiplied fines and penalties shall fairly compensate the State of Louisiana's medical assistance programs for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

N.     That judgment be entered in Relator Westlock's favor and against Defendants for restitution to the Commonwealth of Massachusetts or its political subdivisions for the value of payments or benefits provided, directly or indirectly, as a result of Defendants' unlawful acts, as provided for in MASS. LAWS ANN. ch. 12, 65B, multiplied as provided for in MASS. LAWS ANN. ch. 12, § 5B, plus a civil penalty of not less than five thousand dollars ($5,000) or more than ten thousand dollars ($10,000) for each false claim, pursuant to MASS. LAWS ANN, ch. 12, 5B, to the extent such multiplied penalties shall fairly compensate the Commonwealth of

Filed Under Seal
129894.00601/35873664v.4

Massachusetts or its political subdivisions for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

O.      That judgment be entered in Relator Westlock's favor and against Defendants for restitution to the State of Michigan or its political subdivisions for the value of payments or benefits provided, directly or indirectly, as a result of Defendants' unlawful acts, as provided for in MICH. COMP. LAWS SERV. §§ 400.603–400.606, 400.610b, in order to fairly compensate the State of Michigan or its political subdivisions for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

P.      That judgment be entered in Plaintiff's favor and against Defendants for restitution to the State of Montana or its political subdivisions for the value of payments or benefits provided, directly or indirectly, as a result of Defendants' unlawful acts, as provided for in MONT. CODE ANN. § 17-8-403(2), multiplied as provided for in MONT. CODE ANN. § 17-8-403(2), plus a civil penalty of up to ten thousand dollars ($10,000) for each false claim, pursuant to MONT. CODE ANN. § 17-8-403(2), to the extent such multiplied penalties shall fairly compensate the State of Montana or its political subdivisions for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

Q.      That judgment be entered in Relator Westlock's favor and against Defendants for restitution to the State of New Hampshire or its political subdivisions for the value of payments or benefits provided, directly or indirectly, as a result of Defendants' unlawful acts, as provided for in N.H. REV. STAT. ANN. § 167:6111, multiplied as provided for in N.H. REV. STAT.

Filed Under Seal
129894.00601/35873664v.4

ANN. § 167:61II, plus a civil penalty of two thousand dollars ($2,000) for each false claim, pursuant to REV. STAT. ANN. § 167:61II, to the extent such multiplied penalties shall fairly compensate the State of New Hampshire or its political subdivisions for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

R.    That judgment be entered in Relator Westlock's favor and against Defendants in the amount of the damages sustained by the State of New Jersey or its political subdivisions multiplied as provided for in N.J. STAT. ANN. § 265, plus a civil penalty of not less than fifteen (15) percent or more than twenty five (25) percent per claim as provided by N.J. STAT. ANN. § 265, to the extent such multiplied penalties shall fairly compensate the State of New Jersey or its political subdivisions for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

S.    That judgment be entered in Relator Westlock's favor and against Defendants for restitution to the State of New Mexico or its political subdivisions for the value of payments or benefits provided, directly or indirectly, as a result of Defendants' unlawful acts, as provided for in N.M. STAT. ANN. § 27-14-4, multiplied as provided for in N.M. STAT. ANN. § 27-14-4, to the extent such multiplied penalties shall fairly compensate the State of New Mexico or its political subdivisions for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

T.    That judgment be entered in Relator Westlock's favor and against Defendants for restitution to the State of New York or its political subdivisions for the value of payments or benefits provided, directly or indirectly, as a result of Defendants' unlawful acts, as provided for in N.Y. CLS St. Fin. § 189.1, multiplied as provided for in N.Y. CLS St. Fin. § 189.1, plus a

Filed Under Seal
129894.00601/35873664v.4

Case 1:09-cv-11480-DPW    Document 1-3    Filed 09/08/09    Page 63 of 67

civil penalty of not less than six thousand dollars ($6,000) or more than twelve thousand dollars ($12,000) for each false claim, pursuant to N.Y. CLS St. Fin. § 189.1, to the extent such multiplied penalties shall fairly compensate the State of New York or its political subdivisions for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

U.    That judgment be entered in Relator Westlock's favor and against Defendants for restitution to the State of Nevada for the value of payments or benefits provided, directly or indirectly, as a result of Defendants' unlawful acts, as provided for in NEV. REV. STAT. ANN. 357.040, multiplied as provided for in NEV. REV. STAT. ANN. § 357.040(1), plus a civil penalty of not less than two thousand dollars ($2,000) or more than ten thousand dollars ($10,000) for each act, pursuant to NEV. REV. STAT. ANN. § 357.040, to the extent such multiplied penalties shall fairly compensate the State of Nevada for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

V.    That judgment be entered in Relator Westlock's favor and against Defendants in the amount of the damages sustained by the State of Oklahoma or its political subdivisions multiplied as provided for in OKLA. STAT. tit. 63, § 5053, plus a civil penalty of not less than fifteen (15) percent or more than twenty five (25) percent per claim as provided by OKLA. STAT. tit. 63, § 5053.4, to the extent such multiplied penalties shall fairly compensate the State of Oklahoma or its political subdivisions for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

Filed Under Seal
129894.00601/35873664v.4

W.        That judgment be entered in Relator Westlock's favor and against Defendants in the amount of the damages sustained by the State of Rhode Island or its political subdivisions multiplied as provided for in R.I. GEN. LAWS § 9-1,1-1, plus a civil penalty of not less than fifteen (15) percent or more than twenty five (25) percent per claim as provided by R.I. GEN. LAWS § 9-1,1-4, to the extent such multiplied penalties shall fairly compensate the State of Rhode Island or its political subdivisions for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

X.        That judgment be entered in Relator Westlock's favor and against Defendants for restitution to the State of Tennessee for the value of payments or benefits provided, directly or indirectly, as a result of Defendants' unlawful acts, as provided for in TENN. CODE ANN. § 71-5-182, multiplied as provided for in TENN. CODE ANN. § 71-5-182(a)(l), plus a civil penalty of not less than five thousand dollars ($5,000) or more than ten thousand dollars ($10,000) pursuant to TENN. CODE ANN. § 71-5-182(a)(l), to the extent such multiplied penalties shall fairly compensate the State of Tennessee for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

Y.        That judgment be entered in Relator Westlock's favor and against Defendants for restitution to the State of Texas for the value of payments or benefits provided, directly or indirectly, as a result of Defendants' unlawful acts, as provided for in TEX. HUM. RES. CODE § 36.052(a)(l), multiplied as provided for in TEX. HUM. RES. CODE § 36.052(a)(4), the interest on the value of such payments or benefits at the prejudgment interest rate in effect on the day the payment or benefit was paid or received, for the period from the date the payment or

Filed Under Seal
129894.00601/35873664v.4

benefit was paid or received to the date that restitution is made to the State of Texas, pursuant to

TEX. HUM. RES. CODE § 36.052(a)(2), plus a civil penalty of not less than five thousand

dollars ($5,000) or more than fifteen thousand dollars ($15,000) for each unlawful act committed

that resulted in injury to an elderly or disabled person, and of not less than one thousand dollars

($1,000) or more than ten thousand dollars ($10,000) for each unlawful act committed that did

not result in injury to an elderly or disabled person, pursuant to TEX. HUM. RES. CODE §

36.052(a)(3)(A) and (B), to the extent such multiplied penalties shall fairly compensate the State

of Texas for losses resulting from the various schemes undertaken by Defendants, together with

penalties for specific claims to be identified at trial after full discovery;

Z.      That judgment be entered in Plaintiff's favor and against Defendants in the

amount of the damages sustained by the Commonwealth of Virginia, multiplied as provided for

in VA. CODE ANN. § 8.01-216.3(A), plus a civil penalty of not less than five thousand dollars

($5,000) or more than ten thousand dollars ($10,000) as provided by VA. CODE ANN. § 8.01-

216.3(A), to the extent such multiplied penalties shall fairly compensate the Commonwealth of

Virginia for losses resulting from the various schemes undertaken by Defendants, together with

penalties for specific claims to be identified at trial after full discovery;

AA.     That Defendants be ordered to disgorge all sums by which they have been

enriched unjustly by their wrongful conduct; and

BB.     That judgment be granted for Relator Westlock against Defendants for all costs,

including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Relator

Westlock in the prosecution of this suit; and

CC.     That Relator Westlock be granted such other and further relief as the Court deems

just and proper.

Filed Under Seal
129894.00601/35873664v.4

**WHEREFORE**, Relator Westlock prays for judgment against Defendants as follows:

A.      That Defendants be ordered to cease and desist from submitting any more false claims, or further violating 31 U.S.C. § 3729;

B.      That judgment be entered in Relator Westlock's favor and against Defendants in the amount of each and every false or fraudulent claim, multiplied as provided for in 31 U.S.C. § 3729(a), plus a civil penalty of not less than five thousand five hundred dollars ($5,500) or more than eleven thousand dollars ($11,000) per claim as provided by 31 U.S.C. § 3729(a), to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

C.      That Relator Westlock be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) and § 3730(h), and all State *Qui Tam* statutes;

D.      That judgment be granted for Relator Westlock to compensate for Defendant Pfizer's unlawful retaliation against him for his whistleblowing activities;

E.      That Relator Westlock be awarded compensatory and punitive damages to compensate him for his embarrassment and emotional distress;

F.      That judgment be granted for Relator Westlock against Defendants for all costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Relator Westlock in the prosecution of this suit; and

G.      That Relator Westlock be granted such other and further relief as the Court deems just and proper.

126

**Filed Under Seal**
129894.00601/35873664v.4

## JURY TRIAL DEMAND

Relator Westlock demands a trial by jury of all issues so triable.

Dated:  August __22__, 2008

Paul F. Lynch   BBO# 53730S
65 Franklin Street, Suite 500
Boston, MA 02110
Telephone: 617 426-1120
Facsimile: 617 348-2147

W. Scott Simmer
Thomas J. Poulin
Blank Rome LLP
Watergate
600 New Hampshire Ave., NW
Washington DC 20037
Telephone: 202 772 5967
Facsimile: 202 572 8412

David B. Krangle
Parker Waichman Alonso LLP
111 Great Neck Road
Great Neck, NY 11021
Telephone: 516 466 6500
Facsimile: 516 466 6665

*Counsel for Relator Westlock*

Filed Under Seal
129894.00601/35873664v.4

127